# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MONICA D. NASH,

        Plaintiff,

        v.                        Case No. 24-CV-434

CITY OF MILWAUKEE,

        Defendant.

---

## ORDER

---

### 1. Introduction

Plaintiff Monica D. Nash, representing herself, brings claims against her former employer, the City of Milwaukee (hereinafter "the City"), for discrimination and retaliation. (ECF No. 1.) The court screened Nash's complaint on April 12, 2024, and determined that her allegations were plausible under Title VII of the Civil Rights Act of 1964. (ECF No. 4 at 4.) On March 23, 2026, the City moved for summary judgment. (ECF No. 53.) All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 3, 6.) The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The motion for summary judgment is fully briefed and ready for resolution.

## 2. Preliminary Matters

Before considering the merits of the City's motion for summary judgment, the court must note that Nash did not comply with the court's local rules relating to summary judgment procedures. *See* Civ. L. R. 56 (E.D. Wis). The local rules require a party opposing a motion for summary judgment file a response to the moving party's statement of undisputed facts and identify any additional relevant facts. *See* Civ. L. R. 56(b)(2). These requirements help the court determine which facts are disputed and why. The opposing party's response must reproduce each numbered paragraph from the moving party's statement of facts and respond to each fact. *See* Civ. L. R. 56(b)(2)(B). If a fact is disputed, the party opposing the motion for summary judgment must cite an affidavit, declaration, or other evidence in the record to support the position that the fact is in dispute. *See id*.

In addition, if the opposing party believes there are additional facts that prevent the entry of summary judgment for the moving party, she should include a statement consisting of short, numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support each additional fact. *See* Civ. L. R. 56(b)(2)(B)(ii).

The City submitted a statement of proposed findings of fact (ECF No. 62) in support of its motion for summary judgment. Nash responded (ECF No. 65) but did not reproduce each of the City's proposed facts as required by the local rules. *See* Civ. L. R. 56(b)(2)(B). Instead, without reference to any of the City's 59 proposed facts, Nash

purported to respond to 15 proposed facts that most generously can be characterized as her summary of one or more facts combined. (ECF No. 65.) Nash also responded to certain "proposed facts" that were not included in the City's statement of proposed findings of fact. (*Id*.) These additional facts are unsupported by citations to evidence in the record, so the court will not consider them. *See* Civ. L. R. 56(b)(2)(B)(ii).

Because Nash failed to properly respond to the City's proposed facts, the court will consider the City's facts undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e).

## 3. Facts

The City of Milwaukee operates the Milwaukee Police Department and the Board of Fire and Police Commissioners. (ECF No. 62, ¶ 3.) Monica Nash, an African American female, worked as a community service officer for the Milwaukee Police Department from August 2015 to August 2021. (*Id*., ¶¶ 2, 4.) Community service officers assist with basic police operations and handle various tasks that do not require a sworn police officer. (*Id*., ¶ 5.) For example, community service officers may respond to non-emergency calls, file citizen complaints, follow up on missing persons reports, and deliver reports. (*Id*.)

In 2017 Nash applied to become a sworn police officer for the Milwaukee Police Department. (ECF No. 62, ¶ 7.) Sworn police officers are responsible for maintaining public peace, preventing crime, and enforcing laws, including making arrests and conducting searches. (*Id*., ¶ 8.) The Board of Fire and Police Commissioners determines

3

who is hired and follows a multi-step process to appoint sworn police officers. (ECF No. 56-1.) Applicants must take a written exam which generates an "eligible list" ranking the candidates. (*Id*. at 20.) Selected candidates then undergo pre-employment screening, including physical and psychological testing, a medical evaluation, and a background check. (*Id*. at 17–18.) The Chief of Police can object to any eligible candidate by informing the Board, in writing, of his reasons for objecting. (*Id*. at 22.) If the Chief raises an objection, the Board interviews the candidate to decide whether their name should remain on the eligible list. (*Id*.)

In April 2018 the City notified Nash that she ranked 304 on the eligible list and gave her a conditional job offer. (ECF No. 56-5 at 1.) The letter informed Nash that her employment was contingent on the successful completion of: "a psychological evaluation, a medical examination, a drug screen test, an initial and updated background investigation, the number of vacancies available, approval by the Finance and Personnel Committee, and approval by the Fire and Police Commission." (*Id*.)

In June 2018 Police Inspector Terrence Gordon completed Nash's background investigation and concluded that she should not be appointed to the position due to concerns about her honesty and integrity. (ECF No. 62, ¶ 24; ECF No. 55-2.) From the background investigation, Gordon learned about an incident in February 2018 where Nash reported to Milwaukee Police Officer Chad Stiles that she had been a victim of domestic violence and sent him a photo depicting injuries to her face. (ECF No. 55-2 at 1;

ECF No. 57-1; ECF No. 62, ¶¶ 16–18.) Nash's boyfriend was arrested, but at a follow-up interview with the District Attorney's office Nash recanted her claims and stated she was not a victim of domestic violence, contrary to Officer Stiles's report. (ECF No. 62, ¶ 20–22; ECF No. 55-2 at 1.) Gordon also found out that in November 2017 Nash arrived late to work after a traffic accident and had refused to provide her driver's license to the investigating officer. (ECF No. 55-2 at 2.)

Additionally, the investigation revealed previous instances when Nash was disciplined by the Milwaukee Police Department for tardiness and for driving outside city limits while on duty. (ECF No. 55-2 at 2.) Nash's supervisor also commented that she did not have a good attitude and that he would not recommend her. (*Id*.) Based on these findings, Gordon concluded that Nash's honesty and integrity were "highly questionable" and recommended against selecting her for the position. (*Id*.)

On or around November 9, 2018, Nash was informed that the Chief of Police, through Inspector Gordon, objected to her becoming a sworn police officer. (ECF No. 62, ¶ 26.) The City sent Nash a letter explaining the Chief's reasons for objecting, which were based on her background investigation. (*Id*.) Nash appealed the objection to the Board of Fire and Police Commissioners, which met with Nash to decide whether to overrule the Chief's objection. (*Id*., ¶¶ 29–30.) The Board concluded that Nash needed more experience as a community service officer to grow and mature but encouraged her to reapply in 2021. (*Id*., ¶ 32; ECF No. 56-6.)

In April 2019 Nash filed a complaint with the Wisconsin Department of Workforce Development—Equal Rights Division, alleging the City denied her appointment as a sworn police officer because she is an African American female. (ECF No. 59-6; ECF No. 63-5.) The Equal Rights Division found no probable cause for the complaint. (ECF No. 62, ¶ 41.) Nash appealed this decision and was represented by counsel during a four-day probable cause hearing. (*Id.*, ¶ 42.) After hearing testimony from the Board of Fire and Police Commissioners about why Nash was not selected, the administrative law judge also found no probable cause for the complaint. (*Id.*, ¶ 45.) The Labor and Industry Review Commission affirmed the judge's decision on December 22, 2023. (ECF No. 59-7.)

Nash resigned from her position as a community service officer in August 2021, stating that she was unhappy with the job. (ECF No. 57-9.)

## 4. Summary Judgment

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**5. Analysis**

Nash alleges that the City discriminated against her by removing her from the eligible list of candidates who could become sworn police officers. (ECF No. 1 at 3.) She contends this decision was based on her race and sex. (*Id.*) Nash also alleges that the City retaliated against her for filing a complaint with the Equal Rights Division. (*Id.*)

**5.1. Discrimination**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a Title VII discrimination claim, the plaintiff must present evidence "whether direct or circumstantial, of discriminatory motivation to create a triable issue." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 719 (7th Cir. 2005). Direct evidence, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption" and reveals an "intent to discriminate." *Id*. at 720. Circumstantial evidence allows the trier of fact to infer intentional discrimination. *Id*. The court considers the evidence presented "as a whole, rather than asking whether a particular piece of evidence proves the case by itself." *Ortiz v. Warner Enterprises, Inc*., 834 F.3d 760, 765 (7th Cir. 2016). In the absence of direct or circumstantial evidence, a plaintiff may show discriminatory intent indirectly under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Nash does not present direct or circumstantial evidence of discrimination, so she must proceed under the *McDonnell Douglas* framework. To establish a prima facie case of discrimination in a failure-to-promote or hire context, Nash must present evidence that, if believed, would show: "1) she is a member of a protected group; 2) she was qualified for the position sought; 3) she was rejected for the position; and 4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff." *Johnson v. Nordstrom, Inc*., 260 F.3d 727, 732 (7th Cir. 2001) (citing *Payne v. Milwaukee Cty*.,

146 F.3d 430, 434 (7th Cir. 1998)). "If a plaintiff meets this burden, the defendant has the opportunity to articulate a legitimate nondiscriminatory reason for its action; if it does so, the burden shifts back to the plaintiff to show that this reason is pretextual." *Bio v. Fed. Express. Corp.*, 424 F.3d 593, 596 (2005). "The failure to establish any one of the initial four elements defeats a discrimination claim." *Id.*

The City argues that "having an honest police force is essential to ensuring public trust" and that Nash was not selected to become a sworn police officer because of concerns about her honesty and integrity. (ECF No. 54 at 8.) In response, Nash contends that "[s]he was qualified and completed all hiring steps" and that "similarly situated individuals were treated more favorably." (ECF No. 63 at 2.)

Nash identifies three individuals she believes were similarly situated to her and selected to become sworn police officers. (ECF No. 63 at 2.) She claims that Alina Cha, an Asian female, left the jurisdiction to get food but was still selected. (*Id.*) Nash asserts that Brian Phiel, a white male, was "not required to press charges after being assaulted but was still promoted" and that Leon Davis, a white male, "was involved in multiple domestic violence incidents yet remained employed." (*Id.*)

While Nash argues these individuals were similarly situated to her, she provides no evidence she was as qualified for the position as they were. *See Dandy v. UPS*, 388 F.3d 263, 273 (7th Cir. 2004) (granting summary judgment where the employee "failed to show that she was qualified for the promotion"); *see also Rooks v. Girl Scouts*, No. 95-3516, 1996

9

U.S. App. LEXIS 20389, at 13* (7th Cir. 1996) (explaining that an employee's "self-serving assertions" that she was as qualified for a promotion was insufficient to raise a question of fact). Nor does she provide evidence that the Chief objected to Cha, Phiel, or Davis becoming sworn police officers.

Beyond her general claim of being qualified, Nash provides no evidence that her removal from the eligible candidate list was based on her race or sex. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (explaining that, to avoid summary judgment, "the nonmoving party must come forward with 'specific facts' showing that there is a *genuine issue for trial*") (citing Fed. R. Civ. P. 56 (e)) (emphasis in original)). In contrast, the Chief's letter cites concerns about Nash's honesty and integrity, referencing a prior domestic violence incident, her disciplinary record, and a negative recommendation from her supervisor. (ECF No. 55-2.)

The Board of Fire and Police Commissioners' summary also shows that, although the Board upheld the Chief's decision, they encouraged Nash to reapply in 2021. (ECF No. 55-6.) Nash fails to explain how this evidence supports her race and sex discrimination claim. Even if Nash could establish a prima facie case of discrimination, she presents no evidence that the City's stated reasons for denying her appointment were a pretext for discrimination. *See EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 150 (7th Cir. 1996) (holding that "[t]o expedite the process it may be preferable to get

past the prima facie case and examine the pertinent issue of whether there was discrimination in a job action").

The question at this stage is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the … adverse employment action." *Ortiz*, 834 F.3d at 765. Nash's subjective belief that the City discriminated against her is not enough to create a genuine issue of material fact. *See Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) (holding that "statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact") (quoting *Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986)). Because Nash has not presented evidence from which a reasonable factfinder could find that she was denied a promotion based on her race or sex, the City is entitled to summary judgment on her discrimination claim.

### 5.2. Retaliation

"Title VII prohibits an employer from retaliating against an employee 'because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Igasaki v. Illinois Dep't of Financial and Professional Regulation*, 988 F.3d 948, 959 (7th Cir. 2021)); *see also* 42 U.S.C. § 2000e-3(a). To survive summary judgment, Nash must "offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v.*

*Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). "Ultimately, the inquiry comes down to one question: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused' the materially adverse action?" *Lesiv*, 39 F.4th at 911 (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)); *see also Ortiz*, 834 F.3d at 765.

The City does not dispute that Nash engaged in protected activity by filing a discrimination complaint with the Equal Rights Division. (ECF No. 54 at 11.) However, the City contends that Nash cannot show she suffered a materially adverse employment action or causation between a protected activity and adverse employment action. (*Id*. at 12.)

Nash argues that she experienced a materially adverse action when the City denied her a promotion as a sworn police officer and claims that, after filing her complaint with the Equal Rights Division, she experienced an "excessive workload, assignments she was not trained to perform, and harassment on and off duty." (ECF No. 63 at 3.)

Nash claims that not being promoted to a sworn police officer was a materially adverse action, but this occurred before she filed her discrimination complaint with the Equal Rights Division, so the two events cannot be causally connected. *See Lesiv*, 39 F.4th at 915 (explaining that "[k]nowledge of the protected activity is necessary to show causation for a retaliation claim"). Regarding the other adverse actions Nash alleges, she

does not explain the nature of the allegedly excessive workload (in other words, how much more she was required to work than before), she does not provide any details about assignments she was required to perform but was not trained for, she does not provide any details regarding the harassment to which she was allegedly subjected, nor does she explain how these actions harmed her or how they relate to her having filed a complaint with the Equal Rights Division. *See Lewis v. Wilkie*, 909 F.3d 858, 867–68 (7th Cir. 2018) (explaining that Title VII's anti-retaliation provision "does not protect an employee against 'petty slights or minor annoyances'" but protects an individual "from retaliation that produces an injury or harm") (quoting *Poullard v. McDonald*, 829 F.3d 844, 857 (7th Cir. 2016)). Nash's conclusory statements, without any evidence, do not establish a retaliation claim. *See Delices v. UW Bd. of Regents*, No. 18-cv-1839-bhl, 2023 U.S. Dist. LEXIS 40419, at *49 (E.D. Wis. Mar. 10, 2023) (granting summary judgment where the employee failed to articulate a viable theory to support his retaliation claim.)

Nash fails to present any evidence of a causal link between the actions she alleges were retaliatory and her protected activity. At summary judgment, Nash was required to present evidence connecting adverse treatment to her having engaged in protected activity. Conjectures and speculation is insufficient. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (citation omitted).

Therefore, the City is entitled to summary judgment on Nash's retaliation claim.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 53) is **GRANTED**. This action is dismissed with prejudice. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of June, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge